IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| Troy Wonner, | : | |
| | : | Case No. 1:18-cv-789 |
| Plaintiff, | : | |
| | : | Judge Susan J. Dlott |
| v. | : | |
| | : | Order Granting Defendant's Motion for |
| KDM Signs, Inc., dba P.O.P. Solutions Group, | : | Summary Judgment |
| | : | |
| Defendant. | : | |

This matter is before the Court on the Motion for Summary Judgment (Doc. 37) filed by Defendant KDM Signs, Inc., dba P.O.P. Solutions Group ("KDM"). Plaintiff Troy Wonner failed to file a memorandum in opposition to the Motion for Summary Judgment. The time period for responding stated in the Southern District of Ohio Local Rules has passed, and therefore, the matter is ripe for adjudication.

**I.    BACKGROUND**

Troy Wonner and April Wonner, Troy Wonner's wife, are both former employees of KDM. The Wonners will be referred to herein by their first names for the sake of clarity. KDM is a "point-of-purchase and retail printing, fabrication and fulfillment company." (Kissel Aff., Doc. 36 at PageID 492.)

**A.    Events in 2016**

Troy served as a fulfillment manager at KDM in 2016. He supervised between ten to fifteen employees. (T. Wonner Dep., Doc. 34 at PageID 105.)

April served as a sales-project manager at KDM. (Doc. 1 at PageID 3; Doc. 6 at PageID 31.) April took FMLA leave from work in 2016. After April exhausted her FMLA leave, but

1

was unable to return to work, KDM terminated her employment effective June 1, 2016. (T. Wonner Dep., Doc. 34 at PageID 234, 236.) April filed a charge of discrimination with the EEOC on July 21, 2016. (*Id.* at PageID 237–239.) She named Troy as a witness on the paperwork for her EEOC charge, but the EEOC never contacted Troy to provide any information regarding her allegations. (*Id.* at PageID 318–319.)

Before April filed the EEOC charge, Troy printed out the attendance records for Steve Pruitt, a KDM employee who reported directly to Troy at that time. (*Id.* at PageID 247, 250.) Troy believed that KDM permitted Steve Pruitt to take excessive FMLA leave and did not take an adverse employment action against him. (*Id.* at PageID 251.) Troy provided the Pruitt attendance records to April in early July 2016 to support the EEOC charge of discrimination she filed later that month. (*Id.* at PageID 247–254.) April gave the records to her attorney. (*Id.* at PageID 302.) Troy assumed that the attorney gave the records to the EEOC. (*Id.*)

Troy also assumed that his supervisors were aware that he printed off Pruitt's records. (*Id.* at PageID 260, 300.) The Paycor system from which he printed the records was password protected and created a time stamp when records were printed. (*Id.*) Dan Savino, the HR director for KDM, had told Troy at an unspecified time that he could "see everything that's done on the Paycor system." (*Id.* at PageID 323.) Troy also believed that KDM knew that he had taken Pruitt's attendance records because the records were changed in the Paycor system after he had printed them. (*Id.* at PageID 319.) However, Troy admitted that he did not tell anyone at KDM that he had taken Pruitt's records. (*Id.* at PageID 253–254.) Additionally, he admitted that he did not know if the EEOC produced to KDM any documents to support April's charge against the company. (*Id.* at PageID 256–257, 327–328.)

Bob Kissel, the company president and CEO, denied that KDM knew that Troy

participated in any way with April's EEOC charge, though the company assumed Troy would assist his wife. (Kissel Aff., Doc. 36 at PageID 495.) Kissel also specifically denied that KDM knew that Troy had taken any company records to support the EEOC charge. (*Id.*)

**B.** **Events in 2017–2018**

KDM transferred Troy from the fulfillment manager position to a cutting manager position in July 2017. The move from fulfillment manager to cutting manager was a lateral move. (T. Wonner, Doc. 34 at PageID 197.) Troy's salary, bonus structure, and benefits stayed the same. (*Id.*) Also, Troy did not believe that he would have been terminated if he had refused to transfer positions. (*Id.* at PageID 200.)

KDM lost $3.5 million in business revenue in 2017 because it lost four major accounts and was not able to generate new business to offset the losses. (Kissel Aff., Doc. 36 at PageID 493.) The loss of business reduced the amount of jobs KDM had to complete, including in the cutting department. (*Id.*) KDM determined to re-organize its production line and undertake reductions-in-force. (*Id.* at PageID 493–494.) It determined that the plant manager in Cincinnati could take over management of specific departments. (*Id.* at PageID 494.) KDM first eliminated five positions in September and October 2017. (*Id.*) When business conditions did not improve, KDM eliminated six more positions on December 4, 2017, including Troy's cutting manager position. (*Id.*) KDM eliminated another six positions in February 2018. (*Id.*) In total, KDM eliminated seventeen positions between September 2017 and February 2018. (*Id.*) Kissel averred that the company did not consider April's charge against KDM when it determined which positions to eliminate. (*Id.*)

Troy's employment with KDM ended on December 4, 2017. (T. Wonner, Doc. 34 at PageID 270.) Troy signed a KDM memorandum that same day stating that he had been

informed that his position was eliminated "based upon staff level requirements and . . . not based upon [his] job performance." (Doc. 34-1 at PageID 401.) Troy left KDM two days before the EEOC was scheduled to interview KDM employees regarding April's discrimination charge. (T. Wonner Dep., Doc. 34 at PageID 267.) Troy was not replaced as cutting manager. (Kissel Aff., Doc. 36 at PageID 494.) However, Troy believed that an employee named Tim Karr assumed his duties without receiving the title of manager. (T. Wonner Dep., Doc. 34 at PageID 148–149.)

**C.     Procedural Posture**

April filed a discrimination lawsuit against KDM in the U.S. District Court for Southern District of Ohio, *April S. Wonner v. KDM Signs, Inc.*, No. 1:18-cv-358, on May 23, 2018. The Court dismissed the case on November 13, 2019 after April and KDM reached a settlement.

Troy initiated his suit against KDM on November 13, 2018 asserting claims for associational and direct retaliation in violation of Ohio and federal law and a claim for intentional infliction of emotional distress. (Doc. 1.) KDM filed an Answer denying liability. (Doc. 6.) Following discovery, KDM timely filed the pending Motion for Summary Judgment. Troy did not file a response to the Motion.

**II.    STANDARD OF LAW**

Federal Rule of Civil Procedure 56 governs motions for summary judgment. Summary judgment is appropriate if "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant has the burden to show that no genuine issues of material fact are in dispute. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585–587 (1986); *Provenzano v. LCI Holdings, Inc.*, 663 F.3d 806, 811 (6th Cir. 2011). The movant may support a motion for summary judgment with affidavits or other proof or by exposing the lack of evidence on an issue for which the

nonmoving party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–324 (1986). In responding to a summary judgment motion, the nonmoving party may not rest upon the pleadings but must "present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986).

## III. ANALYSIS

### A. Associational Retaliation

Troy alleges in Counts One and Three of the Complaint that KDM terminated him to retaliate against April for filing the EEOC charge in violation of the Americans with Disability Act ("ADA"), Title VII, and Ohio Revised Code § 4112.02(A) and (I).[1] Associational retaliation is "retaliation against someone so closely related or associated with the person exercising his statutory rights that it would discourage or prevent that person from pursuing those rights." *Rodriguez-Monguio v. Ohio State Univ.*, 499 F. App'x 455, 464 (6th Cir. 2012) (regarding Title VII specifically). The Court will not belabor its analysis in concluding that KDM is entitled to summary judgment.

Troy offers no evidence establishing a causal link between the April's EEOC charge and Troy's termination. To begin, no inference of causation arises from temporal proximity because Troy's employment did not end until approximately seventeen months after April filed the EEOC charge in July 2016. "A time period greater than six months, without more, is not a sufficiently short period of time to satisfy the causal connection element of a retaliation claim." *Nicholson v. City of Clarksville, Tenn.*, 530 F. App'x 434, 448 (6th Cir. 2013).

---

[1] Troy alleges in the specific counts in the Complaint that KDM retaliated against him and against April by terminating his employment. (Doc. 1 at PageID 16–18.) To the extent that Troy suggested in his deposition that the lateral transfer also was a retaliatory act, the Court notes that a lateral transfer is not an adverse employment action and cannot serve as the basis for a retaliation claim. *Mitchell v. Vanderbilt Univ.*, 389 F.3d 177, 183 (6th Cir. 2004) (stating that a denial of a lateral transfer without additional benefits or prestige is not an adverse action).

Moreover, no inference of causation arises because Troy admitted at his deposition that KDM management and owners did not treat him differently at work after April filed her EEOC charge. (T. Wonner Dep., Doc. 34 at PageID 205–206, 229.) Troy speculated at his deposition that KDM terminated him on December 4, 2017 because they did not want him at the company when the EEOC conducted interviews later that week about April's charge. (*Id.* at PageID 268.) However, the EEOC could have interviewed Troy, who was identified as a witness on April's EEOC charge, at any time. It never did so. Additionally, Troy testified that it was well known at the company that April had filed an EEOC charge. (*Id.* at PageID 112, 238.) Employees who had relevant information could have shared it with Troy or April before or after the EEOC conducted interviews.

Finally, and most importantly, KDM's president and CEO averred that Troy's position was eliminated as part of a reduction in force necessitated by a $3.5 million loss in revenue. Troy was one of six employees terminated on December 4, 2017, and he was one of seventeen employees terminated over a six-month period. Troy offers no evidence to refute or prove pretextual those assertions of fact. The Court will grant summary judgment to KDM on the associational retaliation claim.

### B. Direct Retaliation

In Counts Two and Three of the Complaint, Troy alleges that KDM terminated him in retaliation for his participation and support of April's EEOC charge or to prevent him from further supporting the EEOC charge. This claim also fails as a matter of law. To begin, Troy's support of the EEOC charge was minimal. He did not meet with EEOC investigators nor provide records or information directly to the EEOC. Instead, Troy's main contention appears to be that KDM was aware that he had given Pruitt's attendance records—records which

purportedly showed that Pruitt was permitted to take excessive FMLA leave—to his wife in early July 2016 to support her EEOC charge. The Court will assume for purposes of this Order that circumstantial evidence creates an inference that KDM knew Troy had taken Pruitt's records. Even so, Troy has not proven a causal connection between that activity in support of April's EEOC charge and his termination seventeen months later in December 2017. As stated previously, no causal inference can be drawn from temporal proximity because the events are not sufficiently proximate.

Additionally, Troy has not refuted or proven pretextual Kissel's statement that Troy's position was eliminated for non-discriminatory reasons pursuant to a financially-motivated reduction in force. The Court will grant summary judgment to KDM on Troy's direct retaliation claims.

## C.   Intentional Infliction of Emotional Distress

Finally, in Count Four of the Complaint, Troy alleges that KDM's retaliatory acts constituted intentional infliction of emotional distress. KDM did not address the merits of this claim in its Motion for Summary Judgment, but it expressly moved for summary judgment as to all of Troy's claims. (Doc. 37 at PageID 496.)[2] This state law claim fails on multiple grounds, including that Troy has not established the predicate retaliatory acts nor that he suffered compensable emotional distress. The Court will grant summary judgment to KDM on this claim.

---

[2] If KDM had not moved for summary judgment on this claim, the Court would decline to exercise supplemental jurisdiction over it pursuant to 28 U.S.C. § 1367(c)(3).

## IV. CONCLUSION

For the foregoing reasons, KDM's Motion for Summary Judgment (Doc. 37) is

**GRANTED**.

.	**IT IS SO ORDERED.**

BY THE COURT:

S/Susan J. Dlott
Susan J. Dlott
United States District Judge
